UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIE MATHEWS,<br><br>                              Plaintiff,<br><br>          v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | NO:  1:16-CV-03196-FVS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary

judgment. ECF Nos. 13 and 14.  This matter was submitted for consideration

without oral argument. The plaintiff is represented by Attorney D. James Tree.

The defendant is represented by Special Assistant United States Attorney Daphne

Banay.  The Court has reviewed the administrative record and the parties'

completed briefing and is fully informed.  For the reasons discussed below, the

ORDER ~ 1

court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 14, and

**DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 13.

## JURISDICTION

Plaintiff Marie M. Mathews protectively filed for supplemental security income and disability insurance benefits on April 23, 2013. Tr. 192-98. Plaintiff alleged an onset date of July 15, 2009, which was amended at the hearing to May 3, 2011. Tr. 36, 192, 199. Benefits were denied initially (Tr. 109-12) and upon reconsideration (Tr. 117-28). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Tom L. Morris on January 29, 2015. Tr. 33-70. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits (Tr. 13-32) and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only the most pertinent facts are summarized here.

Marie M. Mathews ("Plaintiff") was 45 years old at the time of the hearing. Tr. 35. She testified that she finished high school. Tr. 35. In 1988, Plaintiff was in a motorcycle accident and had surgery on her left leg, which resulted in visible

surgical changes on examination, leg length discrepancy with left leg shorter, and deformities in her left ankle. *See* Tr. 303, 305, 343. Plaintiff lives with her husband, who is self-employed and works full time outside the home. Tr. 42, 55. Plaintiff has work history as a check cashier. Tr. 43 59-60, 240. The record indicates Plaintiff was "let go" from her job in 2009, because she was "holding on to a check that they felt she shouldn't have and was against their policy." Tr. 220, 240, 384. She then received unemployment for a little less than two years. Tr. 36.

Plaintiff testified that the main reason she cannot work at any job is swelling in her left foot and back pain; and she testified that she "would" do a job if they would let her lie down when she was in pain. Tr. 44, 50. She reported she can stand for half an hour to an hour in one place "without assistance;" can walk for about half an hour; and lies down with her legs elevated at least four times a day or more. Tr. 44-45, 48-50. She reported that she uses a cane when she goes to the grocery store, around the house, going to get the mail, and when she was working as a cashier to help her "get up to the counter to help customers." Tr. 46. The cane was not prescribed. Tr. 52. Plaintiff alleges disability due to left leg pain. *See* Tr. 109, 117.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE–STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that she is not only unable to do his previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the

claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 3, 2011, the amended alleged onset date. Tr. 18. At step two, the ALJ found Plaintiff has the following severe impairments: left ankle deformity and shortening of the left leg related to a prior injury, and osteoarthritis of the left knee. Tr. 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then found that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, she can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She can stand and/or walk (with normal breaks) for a total [of] about 2 hours in an 8-hour workday and sit (with normal breaks) for a total [of] about 6 hours in an 8-hour workday. Standing/walking is limited to 20 minutes an occurrence before needing to sit again for 20 minutes. She cannot use her left lower extremity for pushing and/or pulling (including operation of foot controls). She is limited to occasional stooping, kneeling, crouching, crawling, and climbing ramp and stairs. She cannot climb ladders, ropes, or scaffolds. She needs to avoid concentrated exposure to extreme cold and vibrations and even moderate exposure to hazards such as working around dangerous machinery or unprotected heights. She will need one additional break of customary duration without leaving working area.

Tr. 19. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 25. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as document preparer, telephone information clerk, and escort-vehicle driver. Tr. 26-27. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 3, 2011, through the date of the decision. Tr. 27.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 13. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ improperly discredited Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the ALJ erred by failing to develop the record.

## DISCUSSION

### A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that her impairment could reasonably be

expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom." *Vasquez v.*

*Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 20. Plaintiff argues the ALJ erred by rejecting Plaintiff's testimony as not credible. ECF No. 13 at 4-13.

As an initial matter, the Court agrees with Plaintiff that several reasons offered by the ALJ were "insufficient" under the clear and convincing standard. ECF No. 13 at 5-10. First, the ALJ noted that Plaintiff applied for a job in 2011, as she was required to do in order to receive unemployment benefits; and found "[t]his evidence suggests a lack of motivation on the part of [Plaintiff] and raises the concern of secondary gain motivation." Tr. 24. However, Defendant concedes "that the ALJ erred in rejecting Plaintiff's subjective complaints on the basis of her

receipt of unemployment benefits because the record does not clearly establish whether she held [her]self out as available for full-time work to receive unemployment." ECF No. 14 at 11 (citing *Carmickle*, 533 F.3d at 1162). Second, the ALJ found Plaintiff "made inconsistent statements relevant to the issue of disability." Tr. 23. In evaluating credibility, the ALJ may consider inconsistencies in Plaintiff's testimony or between his testimony and his conduct. *Thomas*, 278 F.3d at 958-59; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (in making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation). In support of this finding, the ALJ cited the following alleged inconsistencies: (1) Plaintiff testified to using a cane, but admitted it was not prescribed; and (2) Plaintiff claimed she had to lie down multiple times a day, but this limitation was not mentioned in the treating physician's clinical notes. Tr. 23. Plaintiff argues the ALJ's "reasoning should be rejected as it fails to demonstrate any actual 'inconsistent statements.'" ECF No. 13 at 8-9. The Court agrees. First, as to Plaintiff's use of a cane, the ALJ fails to cite evidence of inconsistencies in Plaintiff's own statements; nor does the Court discern how the lack of prescription, standing alone, qualifies as substantial evidence of an alleged inconsistency sufficient to undermine Plaintiff's overall credibility. Tr. 23. Moreover, Plaintiff's treating provider opined that the cane *is* medically necessary, and the overall record includes references to Plaintiff's use of a cane. Tr. 217, 345, 363, 390; *Cf.*

*Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (finding use of a cane was inconsistent with the medical evidence because no doctor indicated he used or needed a cane, and two doctors specifically noted claimant did not need an assistive device). Similarly, the ALJ fails to cite any inconsistent statement *by Plaintiff* regarding her need to lie down during the day; rather, the ALJ relies on alleged inconsistencies between the treating provider's opinion and his treatment notes, which is better suited to an analysis of the weight granted to the treating provider's opinion, as discussed below, as opposed to Plaintiff's credibility. *See* Tr. 23. Thus, the Court finds these reasons for finding Plaintiff "not entirely credible" were not clear and convincing. However, the error is harmless because, as discussed below, the ALJ gave additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle*, 533 F.3d at 1162-63.

First, the ALJ found "the medical evidence does not support [Plaintiff's] allegations of debilitating symptoms or limitations; [and] [h]er subjective complaints and allegations are out of proportion to the physical findings and are without clinical/laboratory findings." Tr. 21. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the

Court may decline to address this issue because it was not argued with specificity in the opening brief. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Moreover, the ALJ set out, in detail, the medical evidence contradicting Plaintiff's claims of disabling limitations during the relevant adjudicatory period, including: multiple reports by Plaintiff that her pain is "tolerable" and her condition is "stable" (Tr. 290, 296, 299, 302); and largely benign physical examination findings that included two references to some edema and limited range of motion. Tr. 290, 293, 303, 306. The ALJ additionally noted that after the amended alleged onset date, Plaintiff's treatment history of record is entirely comprised of seven visits with her treating physician. Tr. 22, 289-307, 384-86; *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor). The lack of corroboration of Plaintiff's claimed limitations by the objective medical evidence, was a clear and convincing reason, supported by substantial evidence, for the ALJ to find Plaintiff not entirely credible.

Second, the ALJ found Plaintiff "did not generally receive the extent of treatment one would expect for a totally disabled individual, which suggests that her pain and other symptoms were not as serious as alleged in connection with this application and appeal. Despite her complaints, [Plaintiff] did not seek or receive

treatment from a specialist; all treatment was rendered by general practitioner."

Tr. 22. In support of this argument, the ALJ noted that Plaintiff only saw her

treating physician, Dr. Patrick R. Waber, "on seven occasions since the amended

alleged onset date." Tr. 22, 289-307, 384-86. Unexplained, or inadequately

explained, failure to seek treatment or follow a prescribed course of treatment may

be the basis for an adverse credibility finding unless there is a showing of a good

reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Thus, an

ALJ "will not find an individual's symptoms inconsistent with the evidence in the

record on this basis without considering possible reasons he or she may not comply

with treatment or seek treatment consistent with the degree of his or her

complaints." Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016),

*available at* 2016 WL 1119029 ("[a]n individual may not be able to afford

treatment and may not have access to free or low-cost medical services"). Here,

the ALJ considered Plaintiff's explanation that she did not seek treatment, and at

times did not refill her prescriptions, due to inability to afford treatment and/or her

lack of insurance coverage, as follow:

> At the hearing, [Plaintiff] testified that the last time she went to the State
> about obtaining medical insurance was in 2009 or 2010 but she was denied
> because of assets. She admitted she had not applied again nor had she
> applied for 'Obama Care' since it came into operation. Yet, she complains
> about not being able to afford her blood pressure medication. This seems
> inconsistent with the disabling level of pain to which she testified given that
> she has not even tried to get some form of assistance even when [sic]
> became more available for those with financial difficulties.

Tr. 22. Plaintiff cites her reports to treating physician, Dr. Waber, that she could not afford to seek or continue a prescribed course of treatment, and contends that the ALJ "failed to clearly or convincingly demonstrate why this reason was not believable." [1] ECF No. 13 at 6-7 (citing Tr. 289, 305, 328, 334-35, 384). Plaintiff further argued that the "ALJ's reasoning is based upon unwarranted supposition that [Plaintiff] would have been eligible for assisted coverage, but even if this were true, it would not support the ALJ's improper inference that her lack of treatment was due to less severe symptoms rather than her lack of insurance coverage." ECF No. 13 at 6. However, a plain reading of the ALJ's decision indicates that he relied on the inconsistency between Plaintiff's admitted lack of effort in seeking to obtain insurance and her alleged "disabling level of pain;" rather than any "unwarranted

_____

[1] The ALJ also noted that Plaintiff "was receiving State assistance and was not totally precluded from receiving medical treatment." Tr. 23. Defendant concedes that the ALJ did not support this finding with evidence from the record. ECF No. 14 at 5 n.1. However, this error is harmless because, as discussed herein, the ALJ's consideration of Plaintiff's failure to seek treatment, and the ultimate credibility finding, was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

ORDER ~ 16

supposition" that she would have been eligible had she applied.  Tr. 22.  A finding

by the ALJ that the proffered reason is not believable, can cast doubt on the

sincerity of the claimant's pain testimony.  *Fair*, 885 F.2d at 603; *Smolen*, 80 F.3d

at 1284 (ALJ may rely on ordinary techniques of credibility evaluation).

Moreover, even if the evidence may be interpreted more favorably to Plaintiff, it is

susceptible to more than one rational interpretation, and therefore the ALJ's

conclusion must be upheld.  *See Burch*, 400 F.3d at 679.  Thus, Plaintiff's failure

to seek treatment, even in light of her explanation that she did not seek or comply

with treatment due to financial constraints, was reasonably considered by the ALJ

as "suggest[ing] that her pain and other symptoms were not as serious as alleged."

Tr. 22.  This was a clear and convincing reason to find the Plaintiff not entirely

credible.

Third, the ALJ found Plaintiff's activities of daily living "were not limited to

the extent one would expect given her complaints of disabling symptoms and

limitations."  Tr. 23.  It is well-settled that a claimant need not be utterly

incapacitated in order to be eligible for benefits.  *Fair*, 885 F.2d at 603; *see also*

*Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain

activities…does not in any way detract from her credibility as to her overall

disability.").  Regardless, as in this case, even where activities "suggest some

difficulty functioning, they may be grounds for discrediting the [Plaintiff's]

testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. In portions of the record cited by the ALJ, Plaintiff reported being able to attend to her personal care, do laundry and light cleaning, and cook meals daily. Tr. 23 (citing Tr. 256-57, 268, 278). Plaintiff also testified that her husband was self-employed and not home during the day to help her; she could stand for 30 minutes to an hour without assistance; she could do laundry and wash dishes by sitting on a chair when needed; she had a driver's license and drove herself to the store and appointments; she could walk for more than 30 minutes (and did not mention needing a motorized cart); and she spent time reading (30 minutes), on the computer playing video games and being on Facebook (60 minutes), and watching television (4 hours). Tr. 23-24, 42, 45, 52-58. Finally, as noted by the ALJ, Plaintiff testified that she watched her grandchildren (age 3 and 6) by herself; and reported to Dr. Waber in September 2012 that she was "now getting back to work" and "has been quite busy" and "taking care of her grandchildren." Tr. 24, 41, 292; *see Rollins*, 261 F.3d at 857 (Plaintiff's ability to care for young children without help may undermine claims of totally disabling pain).

Plaintiff generally argues that the ALJ erred by "merely provid[ing] a list of activities with no explanation how any of these activities contradict the ALJ's vague and undefined expectation of 'what one would expect' a disabled person to

be able to perform." ECF No. 13 at 11. Plaintiff is correct that "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (citing *Lester*, 81 F.3d at 834). However, Plaintiff's extensive daily activities outlined above, including caring for young children without assistance; was reasonably considered by the ALJ as inconsistent with Plaintiff's complaints of entirely disabling limitations. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("[t]he ALJ is responsible for determining credibility"). This was a clear and convincing reason to find Plaintiff not entirely credible.

Fourth, and finally, the ALJ noted evidence that Plaintiff "stopped working for reasons not related to the allegedly disabling impairments." Tr. 24. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job because he was laid off, rather than because he was injured, was a clear and convincing reason to find him not credible). In support of this finding, the ALJ relies on Plaintiff's admission that "she was let go because she was holding on to [a] check that they felt she shouldn't have and was against their policy." Tr. 24

(citing Tr. 220, 384). The ALJ further noted that "objective medical evidence reveals that her alleged[] impairments were present at approximately the same level of severity prior to the amended alleged onset date. The fact that the impairments did not prevent [Plaintiff] from working then strongly suggest they would not currently prevent work activity." Tr. 24. Plaintiff argues (1) that the ALJ "fails to account" for the treating physician's opinion that Plaintiff's back pain was "progressive," and Plaintiff's subjective complaint that it had been "worsening over the past 18 months;" and (2) the treating physician's note that Plaintiff had "frequent time off" from work since her injury in 1988, and her report that there were times she could not work "more than 5 days a month." ECF No. 13 at 12-13 (citing Tr. 381-84). However, the ALJ specifically relied on "objective medical evidence" to support his finding, as opposed to the subjective complaints and medical opinion evidence offered by Plaintiff to support her argument. A review of the record indicates that objective examination findings, both before and after the amended alleged onset date, are "approximately the same level of severity," and include: "surgical changes" from the 1988 surgery on her left leg, mild edema at times, tenderness to palpation at times, and limited range of motion of the left ankle. *See* Tr. 293, 303, 328 ("some edema that is really unchanged), 337 (findings are "really unchanged"), 349 ("no real changes are noted"), 377, 379, 385. Thus, regardless of evidence that could be considered favorable to the

Plaintiff, the ALJ's finding that Plaintiff stopped working for reasons "unrelated to her alleged impairments," was a clear and convincing reason to find her not entirely credible. *See Molina,* 674 F.3d at 1111 (if evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001)(citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009)(quotation and citation omitted). Plaintiff argues the ALJ erroneously considered the opinions of treating physician Dr. Patrick Waber from April 2013, December 2013, and January 2015. ECF No. 13 at 14-17.

In April 2013, as part of a treatment note, Dr. Waber noted "Things are relatively stable, [Plaintiff] is having some increased difficulty with getting around and standing for longer periods of time. She was wondering about this ability, we did discuss this. She would have difficulty doing any type of job that requires standing for any length of time or walking any distances." Tr. 290. The ALJ noted this statement "does not preclude sedentary work," and accorded the opinion "great weight." Tr. 24. Plaintiff argues the ALJ erred by granting "great weight" to Dr. Waber's 2013 opinion that Plaintiff "would have difficulty doing any type of job that requires standing for any length of time or walking any distance;" while simultaneously finding that the opinion "does not preclude sedentary work," and assessing an RFC that Plaintiff could "stand and/or walk (with normal breaks) for a

total of about 2 hours in an 8-hour workday," and stand/walk "20 minutes an occurrence before needing to sit again for 20 minutes." ECF No. 13 at 14-15; Tr. 19. Specifically, Plaintiff contends the ALJ "misconstrues" Dr. Waber's 2013 opinion, which, according to Plaintiff, "was that she *could not* stand 'for any length of time' or walk for 'any distances' in a work setting." ECF No. 13 at 15 (citing Tr. 290) (emphasis added). This argument is unavailing. Dr. Waber's 2013 opinion states that Plaintiff "*would have difficulty* doing a job that requires standing for any length of time or walking any distance;" not, as seemingly contended by Plaintiff, that she was entirely barred from those activities. Moreover, the entirety of Dr. Waber's 2013 opinion additionally notes that Plaintiff was "relatively stable" and was "having difficulty getting around and standing *for longer periods of time.*" Tr. 290 (emphasis added). Finally, the narrative portions of Dr. Waber's later opinions in 2013 and 2015 state that he was "unable to stand or walk for *long* distances or *prolonged* times;" which the ALJ specifically found to be consistent with the April 2013 opinion. Tr. 25, 383, 391. For all of these reasons, in the context of the entire record, it was reasonable for the ALJ to infer that the limitations assessed by Dr. Waber in April 2013 were not intended to restrict Plaintiff to absolutely no standing and/or walking. *Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Magallanes v. Bowen,* 881 F.2d 747, 755 (9th Cir. 1989). Thus, the Court finds the

ALJ properly considered Dr. Waber's April 2013 opinion, and the assessed RFC is consistent with his opined limitations. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them).

In December 2013 and January 2015,[2] Dr. Waber completed a "Medical Report." Tr. 381-83, 390-91. In both reports, Dr. Waber diagnosed chronic pain left leg, and progressive back pain. Tr. 381, 390. He opined that Plaintiff would have to lie down during the day "multiple times up to 1 hour at a time;" elevate her leg during the day up to one hour at a time; miss 4 or more days per month if attempting to work a 40-hour per week schedule; and her exertional level was "severely limited," defined as unable to lift at least 2 pounds or unable to stand/or walk. Tr. 381-83, 390-91. In the narrative section of both opinions, Dr. Waber further opined that Plaintiff is "unable to stand or walk for long distances or prolonged time due to previous leg injury and progressive back pain that she must lie down to relieve." Tr. 383, 391. The ALJ granted Dr. Waber's opinions "little to no weight." Tr. 24-25. Because his opinion was contradicted by Dr. Gordon

---

[2] These opinions are considered jointly in the parties' briefing and the ALJ's decision; thus, the Court will do the same.

Hale (Tr. 96-99), the ALJ was required to provide specific and legitimate reasons

for rejecting Dr. Waber's opinions. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Waber's "treatment notes … do not reflect or

support the limitations he indicated on [the December 2013 and January 2015

opinions].  The limitations are much more restrictive than what he assessed in

April 2013, yet there is no objective medical evidence of worsening, or any

evidence he had seen [Plaintiff] since November 2013." Tr. 24-25.  A

"discrepancy" between a treating provider's clinical notes and that provider's

medical opinion is an appropriate reason for the ALJ to not rely on that opinion

regarding the claimant's limitations. *See Bayliss*, 427 F.3d at 1216.  In further

support of this reasoning, the ALJ notes that Dr. Waber included limitations (the

"need for a cane, need to lie down") in the December 2013 and January 2015

opinions, that were "never mentioned before in his treatment notes." [3]  Tr. 25.

---

[3] Later in the decision, the ALJ again remarked that Dr. Waber "added limitations

never mentioned in his treatment notes (e.g., need for a cane, need to lie down);"

and found, seemingly based on this evidence, that "it appears Dr. Waber relied

quite heavily on [Plaintiff's] subjective reports of symptoms and limitations."  Tr.

25.  An ALJ may reject a physician's opinion if it is based "to a large extent" on

Plaintiff's self-reports that have been properly discounted as incredible.

Plaintiff argues the April 2013 opinion was consistent with the latter opinions because they "all consistently opined that [Plaintiff] could not perform any work that would require prolonged standing or walking in any capacity."  ECF No. 13 at 15.  However, as discussed above, Dr. Waber's April 2013 treatment note did not opine that Plaintiff *could not* perform work or assess any specific limitations regarding standing and walking; nor did that treatment note opine that Plaintiff needed to lie down during the day for an hour at a time.  Tr. 290.  Thus, it was reasonable for the ALJ to note that the limitations assessed in December 2013 and January 2015 were more restrictive than those assessed in April 2013.  More notably, Plaintiff fails to challenge the ALJ's finding that Dr. Waber's treatment notes do not support the limitations opined in December 2013 and January 2015.

---

*Tommasetti*, 533 F.3d at 1041.  However, the Court finds this evidence is more appropriately considered as evidence of the discrepancy between the opinion and Dr. Waber's treatment notes, as discussed herein; and does not, standing alone, support a finding that Dr. Waber's opinions relied *in large part* on Plaintiff's subjective reports.  However, this error in reasoning is harmless because the ALJ's ultimate conclusion regarding Dr. Waber's December 2013 and January 2015 opinions is adequately supported by substantial evidence.  *See Carmickle*, 533 F.3d at 1162-63.

*See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing). The inconsistencies between Dr. Waber's treatment notes, and the restrictive limitations he opined December 2013 and January 2015, was a specific and legitimate reason to reject those opinions.

Second, the ALJ found that Dr. Waber "failed to explain the type of significant clinical and laboratory abnormalities that would lead to such severe limitations and gave no medical evidence to support the limitations (e.g., no impairments to reasonably [sic] limited lifting to 2 pounds)." [4] Tr. 25. The ALJ need not accept the opinion of any physician, including a treating physician, if that

---

[4] Plaintiff correctly notes that, based on the accompanying narrative, Dr. Waber checked the "severely limited" box in these opinions likely based on limitations in Plaintiff's ability to stand/walk, rather than an inability to lift at least two pounds. ECF No. 13 at 15-16. However, the ALJ's error in referencing Plaintiff's lifting ability as an example of assessed limitations unsupported by clinical findings, as opposed to her standing/walking ability, is harmless because it was inconsequential to the ultimate disability finding. *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination"). As discussed above, Dr. Waber does not offer the requisite clinical findings to support any of his assessed limitations.

opinion is brief, conclusory and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit a physician's opinion that is unsupported by the record as a whole or by objective medical findings); *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (opinions on a check-box form or report which do not contain significant explanation of the basis for the conclusions may be accorded little or no weight). Plaintiff argues that Dr. Waber adequately supported his opinions by noting Plaintiff had a shortened left leg from previous trauma and surgery, chronic lymphedema of the left leg, difficulty walking, and progressive lower back pain. ECF No. 13 at 16 (citing Tr. 381, 390). However, it was reasonable for the ALJ to find Dr. Waber's general reference to these "signs," without specific citation to objective or clinical findings, does not adequately support the severity of the assessed limitations. *See Burch*, 400 F.3d at 679. Plaintiff further contends that Dr. Waber's opinion is based on "significant experience" and "numerous records," and is therefore "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." ECF No. 13 at 16-17 (citing *Garrison*, 759 F.3d at 1013). However, as noted by the ALJ, Plaintiff only saw Dr. Waber seven times during the adjudicatory period. Tr. 22. Moreover, the ALJ recounted Dr. Waber's treatment notes in detail as part of the decision; and these records do not appear to include clinical observations or

objective testing that would qualify as "significant explanation" of the basis for his conclusion that Plaintiff would need to lie down throughout the day for an hour at a time, or that she was unable to stand or walk.  Tr. 21-22; *see Crane*, 76 F.3d at 253.  For all of these reasons, Dr. Waber's failure to adequately explain the severe findings in the December 2013 and January 2015 opinions was a specific and legitimate reasons for the ALJ to reject Dr. Waber's opinion.

Third, the ALJ found Dr. Waber's December 2013 and January 2015 opinions were each "internally inconsistent as he checked a box for 'unable to stand and/or walk' but then hand-wrote that [Plaintiff] was 'unable to stand or walk for long distances or prolonged times.'  These standing/walking restrictions are not the same in severity, and the latter actually supports his April 2013 opinion."  Tr. 25.  Internal inconsistencies within a physician's report constitute relevant evidence when weighing medical opinions.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).  Plaintiff argues the opinions are "consistent, or at least similar."  ECF No. 13 at 16.  However, the ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity.  *See Andrews*, 53 F.3d at 1041.  Moreover, the Court notes that individual medical opinions are preferred over check-box reports.  *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983).  Their internal inconsistency was a specific and legitimate reason to reject Dr. Waber's December 2013 and January 2015 opinions.

Finally, Plaintiff generally argues the ALJ erred by rejecting Dr. Waber's opinions "in favor of the opinions of non-examining medical advisor Dr. Hale." ECF No. 13 at 18. However, while an ALJ generally gives more weight to Dr. Waber's opinion, as a treating physician, than to Dr. Hale's opinion, as a nonexamining reviewing physician; Dr. Hale's opinion may nonetheless constitute substantial evidence if it is, as specifically noted by the ALJ in this case, consistent with other independent evidence in the record. Tr. 24; *Thomas,* 278 F.3d at 957; *Orn,* 495 F.3d at 632–33. Additionally, Plaintiff contends that the ALJ improperly relied on Dr. Hale's opinion when formulating the RFC, because it was "merely [a] rubber stamp" of the findings of state agency single decision maker (SDM), Kathleen Foltz. ECF No. 13 at 18-19. However, as noted by the Defendant, Dr. Hale considered all of the evidence in the record, including Dr. Waber's April 2013 opinion, which was not previously considered by Ms. Foltz. ECF No. 14 at 16-17. Thus, the Court finds the ALJ properly relied on Dr. Hale's opinion, which was granted great weight because it was "consistent with the objective medical evidence as a whole;" and the assessed limitations were properly considered in formulating the RFC. Tr. 24.

The Court finds the ALJ properly considered the medical opinion evidence, including Dr. Waber's April 2013, December 2013, and January 2015 opinions.

**C. Duty to Develop the Record**

The record includes photographs of Plaintiff's feet and legs.  Tr. 387-89.

The ALJ considered the photographs, and found they "are of no value to me as I am not a physician," and "do not add to the medical evidence already reviewed." Tr. 25.  Plaintiff argues the ALJ's "non-medical expertise does not justify the rejection of this probative evidence;" and further contends that the ALJ failed in his duty to develop the record "in order to properly evaluate" the photographs. ECF No. 13 at 19.  However, "[a]n ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Here, the ALJ considered the pictures and reasonably concluded that they do not add to the medical evidence of record.  Tr. 25.  The Court is unable to discern any inadequacy or ambiguity that did not allow for proper evaluation of the record as a whole.  *See Bayliss*, 427 F.3d at 1217.  Thus, the ALJ did not err in failing to further develop the record in this case.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom testimony, properly weighed

the medical opinion evidence, and did not err in his duty to develop the record. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** April 3, 2018.

_s/Fred Van Sickle_
Fred Van Sickle
Senior United States District Judge